# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PIERRE ALEXANDER AMERSON,  )
                           )
            Petitioner,    )
                           )
                           )        1:23CV579
         v.                )
                           )
TODD E. ISHEE, et al.,     )
                           )
            Respondent.    )

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, Pierre Alexander Amerson, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entries 1 and 3.) Respondent filed an answer (Docket Entry 10), a motion for summary judgment (Docket Entry 11), and a supporting brief (Docket Entry 12). Petitioner then filed a response (Docket Entry 14) to the motion for summary judgment and a brief (Docket Entry 15). Petitioner has also filed a motion for the appointment of counsel. (Docket Entry 8.) This matter is ready for a ruling.

## Procedural Background

In 2019, in Lee County Superior Court, Petitioner was convicted, after a jury trial, of first-degree murder and was sentenced to life imprisonment without parole. (Docket Entry 12, Exs. 1-2.) The North Carolina Court of Appeals found no prejudicial error. *See State v. Amerson*, 280 N.C. App. 129 (2021). The North Carolina Supreme Court denied Petitioner's petition for discretionary review. *State v. Amerson*, 871 S.E.2d 522 (N.C. 2022).

On September 6, 2022, Petitioner filed a motion for appropriate relief ("MAR") in Lee County Superior Court. (Docket Entry 12, Ex. 8.) The trial court denied the MAR on October

10, 2022. (*Id.*, Ex. 9.) On October 17, 2022, Petitioner filed an "Attachment" to his MAR. (*Id.*, Ex. 10.) The trial court denied it on October 25, 2022. (Docket Entry 3 at 41.) Petitioner sought review of the October 10, 202,2 order denying his MAR by filing a petition for a writ of certiorari in the North Carolina Court of Appeals (*Id.*, Ex. 11), which the Court of Appeals denied (Docket Entry 3 at 42). Petitioner next filed a petition for a writ of certiorari in the North Carolina Supreme Court, again seeking review of the October 10, 2022, order denying his MAR (Docket Entry 12, Ex. 12), which the state supreme court dismissed (Docket Entry 3 at 40). Petitioner then filed the instant petition on July 13, 2023. (Docket Entry 1.) On August 2, 2023, Petitioner filed a "memorandum of law in support." (Docket Entry 3.)

### Factual Background

The North Carolina Court of Appeals set forth the following factual background in evaluating Petitioner's appeal:

> On the evening of 10 March 2014, Defendant was sitting on Ciola Tysor's porch in Sanford, North Carolina, with Manquell Tysor. Kentreal Quick joined them on the porch for approximately 15 minutes, and then Mr. Quick and Defendant walked down the street to meet Dante Berryman. As they stood on the street, 15-year-old Thomas Dolby, Jr., walked by them; Defendant later described Mr. Dolby as "walking tough, like musclebound stiff, like mean walking." Defendant "made a joke" to Mr. Quick, saying, "That kid could beat you up." Mr. Quick and Mr. Berryman then left the area.
>
> Mr. Dolby passed Defendant again while walking back, and he bumped into Defendant. Defendant said something like, "Oh, f***," or "F*** you." Mr. Dolby turned back to face Defendant and said, "That's your problem. You talk too much." Defendant then pulled a gun from his right side and shot Mr. Dolby three times. Defendant immediately fled the scene.
>
> An ambulance transported Mr. Dolby to Central Carolina Hospital; he was later transported by helicopter to the University

2

of North Carolina Hospital, where he died. An autopsy subsequently revealed that Mr. Dolby sustained three gunshot wounds: one to the inside of his right heel, one to his left upper arm, and a fatal wound to the face.

On 13 March 2014, an arrest warrant for murder was issued for Defendant, and law enforcement officers arrested him the same day. On 31 March 2014, a Lee County grand jury returned an indictment formally charging Defendant with first-degree murder. On 8 May 2014, the State gave notice of its intent to proceed capitally.

The matter came on for trial on 3 September 2019 in Lee County Superior Court before the Honorable Charles W. Gilchrist. In his opening statement, defense counsel admitted that Defendant shot and killed Mr. Dolby, but he challenged the State's assertion that Defendant had acted with premeditation and deliberation. Counsel argued that Defendant suffers from post-traumatic stress disorder ("PTSD"), and that his mental condition caused him to be hypervigilant and react disproportionately to Mr. Dolby's statements to him on the street.

In support of this theory, Defendant presented the testimony of Dr. George Corvin, M.D., an expert in general and forensic psychiatry, and Dr. Jennifer Sapia, Ph.D., a licensed psychologist, both of whom conducted psychological assessments of Defendant and diagnosed him with PTSD. At trial, Dr. Sapia recounted Defendant's "extensive history of adverse childhood experiences, including abuse, trauma, neglect, exposure to domestic violence, exposure to parental substance abuse, and incarceration." The defense experts' testimony revealed that Defendant was first diagnosed with PTSD at age 8, when he was involuntarily committed to John Umstead Hospital after experiencing hallucinations and expressing suicidal ideations. After his first hospitalization and throughout his childhood, Defendant was repeatedly returned to his "dysfunctional, abusive home environment." Dr. Sapia testified that due to Defendant's traumatic childhood experiences and home environment, he regularly suffers from a number of PTSD symptoms, including nightmares, hypervigilance, depression, and paranoia. Dr. Corvin

3

testified that Defendant "continues to experience the psychological aftermath of being raised in a way that most of us can[ ] hardly imagine."

Dr. Sapia further testified that when Defendant encountered Mr. Dolby on the night of 10 March 2014, he "reacted to his perception of an imminent threat to his well-being and that his judgment, his thinking, his decision-making abilities were all impaired by the PTSD, and that fear in essence took over." Dr. Sapia explained:

> PTSD can be highly reactive. In a stressful situation, in a situation where [Defendant] has sensed fear and danger historically, he has been very anxious and very reactive, very impulsive. Prone to react or respond when he is anxious. And so my opinion is that his perception of the situation was impacted by his PTSD, and the stress and the fear and the emotion took over, which impaired his ability to consider the situation, to reflect upon it, consider his courses of action. That his response and his action was reflective, not thoughtful. He reacted to his perception of an imminent threat to his well-being. So again, it was a reflexive, reactive action vs. something that was thoughtful and considered.

Dr. Corvin testified to a similar psychiatric opinion:

> [G]iven the evidence that I have looked at from a psychiatric standpoint, . . . up until the moment that the victim bumped into him, [Defendant] was sort of in his usual state of mind. . . . However, given his trauma history at the moment, . . . it's this sudden reflexive, impulsive act based on a post-traumatic induced misinterpretation or overinterpretation of what was probably a nothing event in the lives of both of these individuals, but he misinterpreted it as dangerous with tragic consequences.

In rebuttal, the State presented the testimony of Dr. Thomas Owens, M.D., an expert in forensic psychiatry employed by Central Regional Hospital who evaluated Defendant in an

4

inpatient psychiatric unit in May and June of 2019. Dr. Owens prepared a written report of his findings based on his evaluation of Defendant, and prior to his testimony, the parties agreed to redact certain portions of the report that were unfairly prejudicial to Defendant.

During trial, the State sought to enter Dr. Owens's redacted report into evidence:

> Q Okay. And I'm going to show you what I have marked State's Exhibit number 90. If you could look through that. Let me know when you have had a chance to do that.
>
> A Yeah, there is some modifications, but this is a copy of the report I prepared for the court.
>
> . . . .
>
> Q And State's Exhibit number 90, is that a fair and accurate version of your report as it exists here in court? Is that a copy of your report?
>
> A *It's a copy of my report. There is some information that was taken out that I understand could have been prejudicial.*
>
> [DEFENSE COUNSEL]: Objection, your Honor.
>
> THE COURT: Sustained. Motion to strike is allowed. Ladies and gentlemen, you will disregard the last statement of the witness.

(Emphasis added).

Defense counsel then asked to be heard outside the presence of the jury and moved for a mistrial:

> Your Honor, we're going to ask for a mistrial. I think the jury's going to be given a copy of this report. It's already been marked as an exhibit. There are obviously lots of gaps in that report, lots of spaces. Now the jury knows that the reason that information was taken out is because it's prejudicial towards the defendant. . . . This is something that I would think that an experienced witness who has

5

testified over 200 times would know better than to say, but to look at the jury and say, I took out prejudicial information against the defendant, I don't see how you correct that.

The trial court heard the arguments of the parties and denied Defendant's motion for a mistrial.

Defense counsel then moved, as an alternative remedy, that the report not be admitted into evidence. The trial court agreed to exclude the report:

> THE COURT: All right. Defense motion is allowed. Report's excluded . . . due to the potential prejudicial effect. All right. I think that in light of the court's motion to strike, limiting instruction, and excluding the written report, that that's a more than sufficient remedy for any prejudice that may have occurred. Just to make that clear for the record.
>
> . . . .
>
> I'm not saying [the State] can't ask [Dr. Owens] what his opinions are. I'm not saying you can't ask him what the basis of them is. You just can't put the report into evidence.
>
> . . . .
>
> And he can refer to the report, and defense can ask him about stuff that's in the report, but the report itself is not coming into evidence. And just to be clear, the reason for that is the excisions that have been made from the report in relation to what's happened in court, that's the problem. So in light of that, out of abundance of caution, I've allowed the defendant's motion.

During his testimony, Dr. Owens opined that "in spite of . . . [Defendant]'s long history of trauma," he was not suffering from PTSD in March of 2014. He further testified that he "saw no evidence that [Defendant] lacked the [ability to e]ngage in deliberative contemplation."

6

> On 11 October 2019, the jury returned its verdict finding
> Defendant guilty of first-degree murder. The matter then
> proceeded to the sentencing phase, and on 16 October 2019, the
> jury returned its recommendation of life imprisonment without
> parole. The trial court entered judgment upon the jury's verdict
> and sentenced Defendant to life imprisonment without the
> possibility of parole, served in the custody of the North Carolina
> Division of Adult Correction. Defendant gave notice of appeal
> in open court.

*Amerson*, 280 N.C. App. at 129.

## Petitioner's Grounds

In Ground One, Petitioner alleges he received ineffective assistance of trial counsel because (1) one of his two appointed trial attorneys changed repeatedly before trial, (2) his attorneys failed to adequately review discovery, and (3) his attorney during opening statement conceded his guilt without consent. (Docket Entry 1, Ground One.)

In Ground Two, titled "Prosecutorial Misconduct," Petitioner claims the prosecutor violated his Fifth, Eighth, and Fourteenth Amendment rights by (1) using prior convictions from an "invalid plea" as an aggravating circumstance in seeking the death penalty, citing N.C.G.S. § 15A-2000(e)(3); (2) eliciting "excluded prejudic[al] information to the jury after there was [a] mistrial concerning the same issue," citing *Miranda v. Arizona*, 384 U.S. 436 (1966); and (3) withholding exculpatory evidence "of [a] lady in silver/grey colored van who disturb[ed] the] scene of [the] incident before the police showed up," citing *Brady v. Maryland*, 373 U.S. 83 (1963). (Docket Entry 1, Ground Two; Docket Entry 3 at 4-7.)

In Ground Three, titled "Abuse of Discretion," Petitioner contends the trial court violated his due process rights under the Fourteenth Amendment by (1) allowing the prosecutor to use prior convictions from "an invalid plea" in seeking the death penalty, citing

7

*Bell v. Cone*, 543 U.S. 447 (2005); (2) allowing the prosecutor to impeach its own expert witness and present "excluded information," citing *Old Chief v. United States*, 519 U.S. 172 (1997); and (3) not giving an instruction on self-defense, to which Petitioner claims he was entitled, citing *Mullaney v. Wilbur*, 421 U.S. 684 (1975). (Docket Entry 1, Ground Three; Docket Entry 3 at 7.)

In Ground Four, Petitioner alleges that he received ineffective assistance of counsel when his appellate counsel did not raise prosecutorial misconduct claims on appeal. (Docket Entry 1, Ground Four.) As explained in greater detail below, none of these grounds or sub-grounds warrants any relief.

## Standard of Review

As a preliminary matter, to receive habeas relief, a petitioner must first exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). This is

> [b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).[1] In a two-tiered appellate system like North Carolina's, "one complete round" includes not only direct appeal to the state's intermediate appellate court, but also the opportunity to petition for discretionary review in the North

---

[1] To satisfy exhaustion, a petitioner must have "fairly present[ed]" the substance of his claims to each appropriate state court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The claim must have been presented as a federal-law violation, not merely a state-law violation. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). Additionally, a petitioner must have explained how the alleged events establish a violation of his constitutional rights. *Mallory v. Smith*, 27 F.3d 991, 994-95 (4th Cir. 1994).

Case 1:23-cv-00579-TDS-JLW    Document 18    Filed 06/05/24    Page 8 of 22

Carolina Supreme Court. *See id.* Claims not raised in a petition to the state's highest court are non-exhausted and therefore generally procedurally barred from federal habeas review. *Id.* at 848. Moreover, failure to exhaust state law remedies will result in the claims being procedurally barred from federal review if, upon return to the state courts, those courts would find that the claims are procedurally barred. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). North Carolina General Statute § 15A-1419 imposes such a mandatory procedural bar for claims that could have been presented on appeal or in a prior motion for appropriate relief. *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001); N.C.G.S. § 15A-1419.[2]

Additionally, absent cause and prejudice or a miscarriage of justice, a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). A procedural rule is adequate if the state court regularly applies it,

---

[2] One may overcome a procedural default by showing cause and prejudice arising from the asserted constitutional error. *McCarver v. Lee*, 221 F.3d 583, 591-92 (4th Cir. 2000). To show "cause," a petitioner may make "a showing that the factual or legal basis for a claim was not reasonably available to counsel." *Id.* at 591 (citation omitted). To establish "prejudice," a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 592 (citation omitted). One may also overcome procedural default by demonstrating that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006) (citation omitted). This exception applies only to cases involving extraordinary instances "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

*Johnson v. Mississippi*, 486 U.S. 578, 587 (1988), and is independent if it does not depend on a federal constitutional determination, *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).

Where it is clear that "claims presented to the state court were subject to summary denial on procedural grounds under state law," this factor supports the conclusion that the denial "fairly appears" to rest on an adequate and independent state ground. *Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Wilson v. Moore*, 178 F.3d 266, 276 (4th Cir. 1999).[3] When claims or sub-claims set forth below are said to be subject to procedural default, the Court has applied the standard set forth above.

Additionally, where a state trial court adjudicated a petitioner's claims on their merits, this Court must apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to such claims. That statute precludes habeas relief in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state decision

---

[3] Again, the procedurally defaulted claim may only then be raised in a federal habeas petition if the petitioner can first demonstrate cause and actual prejudice or that he is actually innocent of the challenged conviction. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Trevino v. Thaler*, 133 S. Ct. 1911, 1917 (2013) ("[One] may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law.") (quoting *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012)).

10

"involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. "Unreasonable" does not mean just "incorrect" or "erroneous" and the Court must judge the reasonableness from an objective standpoint. *Id.* at 409-11. State court factual findings are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When claims or sub-claims set forth below are addressed on the merits, the Court has applied the standard set forth above.

## Discussion

## Ground One

In Ground One, Petitioner alleges he received ineffective assistance of counsel because (1) one of his two appointed trial attorneys changed repeatedly before trial, (2) his attorneys failed to adequately review discovery, and (3) his attorney during opening statement conceded his guilt without consent. (Docket Entry 1, Ground One.) As explained in greater detail below, none of these sub-grounds has merit.

To prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668, 688, 691-92 (1984). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, a petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

11

Petitioner's claim that he received ineffective assistance of counsel because one of his two trial counsels repeatedly changed over five years is meritless and should be summarily denied. Under North Carolina law, an indigent defendant in a capital case has a statutory right to a second appointed counsel. *See* N.C.G.S. § 7A-450(b1); *accord State v. Locklear*, 322 N.C. 349, 357 (1988) ("An indigent defendant's right to the appointment of *additional* counsel in capital cases is statutory, not constitutional."). Petitioner second counsel (Emilia Beskind) remained the same since she had been appointed around five years before trial began and Petitioner's first counsel in the end (Stephen Freedman) had roughly a year and a half to prepare for the jury trial. (Docket Entry 3 at 14, 16; Docket Entry 12, Ex. 14.) Neither element of *Strickland* is met here.

Petitioner's claim that he received ineffective assistance of counsel because his counsel admitted his guilt without his consent is also meritless and should be summarily denied. During a pretrial hearing around one month before trial began, Petitioner's counsel discussed in open court their strategy to admit not that Petitioner was guilty of any criminal offense, but to admit that Petitioner had in fact shot the victim. During a pretrial hearing around one month before trial began, Petitioner in open court acknowledged the defense strategy to admit that Petitioner had shot the victim. (Docket Entry 12, Ex. 13.)

The trial court engaged in a colloquy with Petitioner, who stated in open court that he understood and approved the strategy. (*Id.* at 72-74.) When the trial court confirmed, "do you still want your attorneys to use this strategy and to admit that you shot Mr. Dolby," Petitioner replied, "Yes, I do." (*Id.*, Ex. 13 at 73.) Consistent with this strategy, Petitioner's counsel during opening statement told the jury "[Petitioner] shot Mr. Dolby" and was "responsible for his

12

death." (*Id.*, Ex. 14 at 2250.) But counsel, argued, "[Petitioner] is not guilty of first-degree premeditated murder." (*Id.*) Counsel said the defense will "ask you to hold [Petitioner] responsible for what he did" and "ask you to find that he is not guilty of first-degree premeditated murder." (*Id.* at 2250.) Given the record establishing that Petitioner knew and approved this defense strategy, and that counsel admitted he fatally shot the victim but never that he was guilty of any charged offense, Petitioner fails to meet his burden here.

Last, Petitioner's claim that he received ineffective assistance of counsel because his attorneys failed to adequately review discovery likewise should be summarily denied. Petitioner cites the transcript from the pretrial motions hearings on August 1, 2019. As the transcript indicates, defense counsel had just a few days previously received hundreds of pages of discovery, including victim-impact evidence that would not be relevant until the capital sentencing proceeding. (*Id.*, Ex. 17 at 31-32, 41-42.) Nevertheless, Petitioner's trial began about one month later. (Docket Entry 12, Ex. 3 at 2 ("The capital trial began on 3 September 2019 in Lee County Superior Court before the Honorable C. Winston Gilchrist.").) There is no reason to believe that this was inadequate time to review the discovery, that counsel failed to adequately review discovery, or that (even assuming for the sake of argument that counsel failed to adequately review discovery) Petitioner was somehow prejudiced as a result.

## Ground Two

Next, in Ground Two, titled "Prosecutorial Misconduct," Petitioner claims the prosecutor violated his Fifth, Eighth, and Fourteenth Amendment rights by (1) using prior convictions from an "invalid plea" as an aggravating circumstance in seeking the death penalty, citing N.C.G.S. § 15A-2000(e)(3); (2) eliciting "excluded prejudic[al] information to the jury

13

after there was [a] mistrial concerning the same issue," citing *Miranda v. Arizona*, 384 U.S. 436 (1966); and (3) withholding exculpatory evidence "of [a] lady in [a] silver/grey colored van who disturb[ed the] scene of [the] incident before the police showed up," citing *Brady v. Maryland*, 373 U.S. 83 (1963). (Docket Entry 1, Ground Two; Docket Entry 3 at 4-7.) As explained in greater detail below, none of these sub-claims warrants any relief.

### 1. Improper-Aggravating-Circumstance Claim

Petitioner first claims the prosecutor violated his rights by using prior convictions from an "invalid plea" as an aggravating circumstance in seeking the death penalty, citing N.C.G.S. § 15A-2000(e)(3). Petitioner's improper-aggravating-circumstance claim should be dismissed for failure to state a cognizable claim for federal habeas relief. Petitioner does not challenge his murder conviction in this claim, and he was not sentenced to death. Therefore, success on this claim would not impact the fact or duration of his sentence to life imprisonment.

More specifically, in North Carolina, an adult convicted of first-degree murder "shall be punished with death or . . . for life without parole[.]" N.C.G.S. § 14-17(a). "The State, in its discretion, may elect to try a defendant capitally or noncapitally for first degree murder[.]" N.C.G.S. § 15A-2004(a). At a capital sentencing proceeding, the jury is tasked with making findings on submitted statutory aggravating and mitigating circumstances, balancing those circumstances, and recommending one of two mutually exclusive sentencing options: death or life imprisonment. *See generally* N.C.G.S. § 15A-2000 (explaining North Carolina's capital sentencing procedure). Because of North Carolina's capital sentencing scheme, statutory aggravating circumstances are relevant only if the death penalty was imposed.

Here, Petitioner was tried capitally for first-degree murder and convicted. At his capital

14

sentencing proceeding, the prosecutor submitted as aggravating circumstances the facts that Petitioner had prior convictions of violence against persons (*i.e.* armed robbery and assault with a deadly weapon inflicting serious injury). *See* N.C.G.S. § 15A-2000(e)(3). The capital jury found the existence of these aggravating circumstances beyond a reasonable doubt, as well as several mitigating circumstances, and found the death penalty was unwarranted. It ultimately recommended a sentence of life imprisonment without parole, and Petitioner is in custody based on a state judgment sentencing him to life. (Docket Entry 12, Exs. 1-2.)

The improper-aggravating-circumstance claim in Ground Two (and as explained below as well, in Ground Three) should be dismissed. It does not challenge his murder conviction, and Petitioner is not "in custody" based on a state judgment sentencing him to death. *See* 28 U.S.C. § 2254(a). Therefore, success on the claim would not necessarily spell speedier release, the commutation of his sentence, or even imply that his life sentence may be invalid. As a result, any alleged procedural or substantive error concerning using particular prior convictions to support aggravating circumstances for his capital sentencing proceeding does not raise any cognizable claim for federal habeas relief. Petitioner's claim, having no bearing on the fact of his murder conviction or duration of his life sentence, should be dismissed as not cognizable in this § 2254 petition.

2. **Evidentiary Claim**

Petitioner next asserts that the prosecutor violated his rights by eliciting "excluded prejudic[al] information to the jury after there was [a] mistrial concerning the same issue," citing *Miranda v. Arizona*, 384 U.S. 436 (1966). This argument also lacks merit.

15

"[W]hen a petitioner's claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (citation omitted)). Generally, challenges to the admission of evidence in a state criminal trial are not cognizable absent a violation of a specific federal constitutional provision or error so serious it renders the entire trial fundamentally unfair, thereby violating the Fourteenth Amendment's Due Process Clause. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *accord Howard v. Moore*, 131 F.3d 399, 415 n.18 (4th Cir. 1997) ("State court trial rulings regarding the admission and exclusion of evidence are cognizable in federal habeas corpus review only to the extent that they violate specific constitutional provisions or are so egregious as to render the entire trial fundamentally unfair, thereby violating the Due Process Clause of the Fourteenth Amendment.*") abrogated on other grounds by Miller-El v. Dretke*, 545 U.S. 231 (2005); *see also Richardson v. Kornegay*, 3 F.4th 687, 696 (4th Cir. 2021) ("We do not generally review state-court determinations of state-law questions, like the admissibility of evidence."); *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008) ("[W]e do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding."). Whether evidence was properly admitted under state law is "no part of a federal court's habeas review of a state conviction." *McGuire*, 502 U.S. at 67; *see also Jones v. Hendrix*, 599 U.S. 465, 490 (2023) (explaining that "a state prisoner could never bring a pure statutory-error claim in federal habeas, because "federal habeas corpus relief does not lie for errors of state law.") (citations omitted).

Here, under North Carolina law, the North Carolina Rules of Evidence govern the admissibility of evidence in a state criminal trial, including the impeachment of witnesses and

16

admission of expert witness testimony. *See, e.g.*, N.C.G.S. § 8C-1, Rule 607, 702. Petitioner's evidentiary claim in Ground Two challenges the admission of testimony by the State's expert rebuttal witness, Dr. Owens. (Docket Entry 1 Ground Two; Docket Entry 3 at 6.) Specifically, he challenges the prosecutor's elicitation of certain "excluded prejudice [sic] information to the jury after there was a mistrial concerning the same use," and the trial court's alleged improper allowance of the prosecutor to impeach Dr. Owens' expert opinion. (Docket Entry 12, Ex. 15 at 3199; *Id.*, Ex. 16 at 3309-11.)

These evidentiary claims are not cognizable.[4] Insofar as Petitioner is challenging the admissibility of expert opinion testimony, its admission, like the impeachment of witnesses, is governed by state evidence law and does not involve any federal constitutional issues. *See McGuire*, 502 U.S. at 67-68; *see also* N.C.G.S. § 8C-1, Rules 607, 702. Petitioner does not claim the admission of Dr. Owens' expert opinion testimony violated his Fourteenth Amendment due process rights, but that it violated his Fifth Amendment rights, citing *Miranda*. Petitioner identifies no rule prohibiting a party from impeaching its own witness. *See* N.C.G.S. § 8C-1, Rule 607 (allowing such impeachment); Fed. R. Evid. 607 (same). And, in any event, Petitioner misreads the transcript: Dr. Owens' expert opinion in his report was that "there was *no evidence* that [Petitioner] lacked the capacity to contemplate his situation at the time" of the shooting. (Docket Entry 12, Ex. 15 at 3199) (emphasis added). Consistently, the prosecutor during rebuttal elicited Dr. Owens' testimony that, in his expert opinion, he saw no evidence that Petitioner at the time of the shooting lacked the ability to "[e]ngage in deliberative

---

[4] Petitioner's bare citation to the Fifth Amendment and *Miranda* are misplaced, as the cited transcript pages refer to statements Petitioner voluntarily made to Dr. Owens. (Docket Entry 12, Ex. 15 at 3199; *Id.*, Ex. 16 at 3309, 3314-15.)

Case 1:23-cv-00579-TDS-JLW    Document 18    Filed 06/05/24    Page 17 of 22

contemplation." (Docket Entry 12, Ex. 16 at 3255.) The evidentiary claims should be dismissed as not presenting any federal law claim cognizable on federal habeas review.

Beyond this, the State makes a persuasive argument that this sub-ground has been procedurally defaulted, because Petitioner never raised the matter on direct appeal at all, or in his MAR or amended MAR in adequate federal terms, and if he were to return to state court now to try to do so, the matter would be procedurally defaulted. (Docket Entry 12 at 14-15.) Finally, even if this sub-ground is viewed as a cognizable habeas claim that has been properly exhausted in state court (which it is not), Petitioner has not attempted to demonstrate, much less shown, how the state court's rejection of his evidentiary claims would have been an unreasonable application of clearly established federal law. *See*, *e.g.*, *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (explaining deferential standard of federal habeas review of merits adjudications by state courts). For all these reasons, this sub-ground lacks merit.

### 3. *Brady*

Petitioner's last sub-ground in Ground Two asserts that the State improperly withheld exculpatory evidence "of [a] lady in [a] silver/grey colored van who disturb[ed the] scene of [the] incident before the police showed up," citing *Brady v. Maryland*, 373 U.S. 83 (1963). This sub-ground also lacks merit.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and its progeny, the failure by the prosecution to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (citation omitted); *see also Giglio v. United States*, 405 U.S. 150, 154-55 (1972). As such, a *Brady* violation occurs if

Case 1:23-cv-00579-TDS-JLW   Document 18   Filed 06/05/24   Page 18 of 22

evidence is (1) favorable to the accused (either exculpatory or impeaching), (2) suppressed by the prosecution (willfully or inadvertently), and (3) material (prejudicial). *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *see also Monroe v. Angelone*, 323 F.3d 286, 299-300 (4th Cir. 2003) (citation omitted).

Petitioner cannot establish a *Brady* violation. First, he fails to identify any particular evidence the prosecution allegedly withheld. Second, he fails to allege, much less show, how such unidentified evidence would have been favorable, that it had been suppressed by the State, or that it was material to his defense. Given that the defense strategy was to admit that Petitioner fatally shot the victim but assert his mental disability rendered him unable to act with premeditation and deliberation required for first-degree murder, Petitioner fails to explain in any non-conclusory manner how evidence about a lady in a silver van disturbing the crime scene could have had any impact on the jury's verdict. He fails to satisfy his burden for the *Brady* sub-claim.

## **Ground Three**

In Ground Three, titled "Abuse of Discretion," Petitioner contends the trial court violated his due process rights under the Fourteenth Amendment by (1) allowing the prosecutor to use prior convictions from "an invalid plea" in seeking the death penalty, citing *Bell v. Cone*, 543 U.S. 447 (2005); (2) allowing the prosecutor to impeach its own expert witness and present "excluded information," citing *Old Chief v. United States*, 519 U.S. 172 (1997); and (3) not giving an instruction on self-defense, to which Petitioner claims he was entitled, citing *Mullaney v. Wilbur*, 421 U.S. 684 (1975). (Docket Entry 1, Ground Three; Docket Entry 3 at 7.)

Case 1:23-cv-00579-TDS-JLW    Document 18    Filed 06/05/24    Page 19 of 22

The first two sub-grounds overlap with sub-grounds set forth above and found to warrant no relief. Consequently, they fail for reasons already set forth above. More specifically, Petitioner's improper-aggravating-circumstance claim fails because, as explained in greater detail above, Petitioner does not challenge his murder conviction in this claim, and he was not sentenced to death. Therefore, success on this claim would not impact the fact or duration of his sentence to life imprisonment. This sub-ground is therefore non-cognizable. Second, Petitioner's evidentiary claim that the trial court erred by allowing the prosecutor to impeach its own expert witness (again, Dr. Owen) and present "excluded information" fails because it is non-cognizable as it relates solely to an interpretation of state law, is subject to procedural default, and is substantively without merit.

Third, Petitioner's instructional claim that the trial court violated his rights by not giving a self-defense instruction requires an interpretation of state law defining the offense of first-degree murder and self-defense as it developed in North Carolina. Instructional claims generally are not cognizable on federal habeas review unless they violate a defendant's Fourteenth Amendment due process right to hold the State to its burden to proving each essential element of a criminal offense beyond a reasonable doubt. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 119-21, n.21 (1982) (explaining that the prosecution's constitutional duty to negate affirmative defenses may depend on the manner in which the State defines the charged crime); *Martin v. Ohio*, 480 U.S. 228, 235 (1987) (observing that it is a matter of state law whether the prosecution must prove the absence of self-defense when it is properly raised by the defendant). Petitioner does not make such a claim here, much less a persuasive one. This sub-ground should therefore be dismissed as not cognizable, presenting no valid federal-law claim.

20

Petitioner's allegation regarding the trial court's failure to charge self-defense is a state court error, which this Court cannot review. *See Lee v. Warden Perry Corr. Inst.*, C/A No. 8:18-cv-01921-HMH-JDA, 2019 WL 920882, at *9 (D.S.C. Jan. 8, 2019) ("Petitioner's allegation regarding the trial court's failure to charge self defense is a state court error, which this Court cannot review.").

Beyond this, the State makes a persuasive argument that this sub-ground has been procedurally defaulted, because Petitioner never raised the matter on direct appeal at all, or in his MAR or amended MAR in adequate federal terms, and if he were to return to state court now to try to do so, the matter would be procedurally defaulted. (Docket Entry 12 at 16-17.) Finally, even assuming the state court viewed this as a federal law claim and adjudicated it on the merits, Petitioner has not alleged, much less shown, how the state court's rejection of his instructional claim would have been an unreasonable application of clearly established federal law. For all these reasons, this sub-ground lacks merit.

### **Ground Four**

In Ground Four, Petitioner alleges that he received ineffective assistance of counsel when his appellate counsel did not raise prosecutorial misconduct claims on appeal. (Docket Entry 1, Ground Four.) Petitioner procedurally defaulted his appellate ineffective assistance of counsel claim. Petitioner did not raise any such claim to any appropriate state court. Further, he cannot now raise this appellate ineffective assistance of counsel claim in a subsequent MAR. As a result, Ground Four is procedurally defaulted, precluding habeas review.[5] Beyond this,

---

[5] Petitioner has not made a showing sufficient to overcome procedural default as to this or any of his other procedurally defaulted sub-grounds.

Case 1:23-cv-00579-TDS-JLW   Document 18   Filed 06/05/24   Page 21 of 22

appellate counsel had no obligation to raise Petitioner's meritless prosecutorial conduct allegations on appeal. For the reasons set forth above, the Petition should be denied.

<u>**Motion for the Appointment of Counsel**</u>

Petitioner also requests the appointment of counsel. (Docket Entry 8.) There is no constitutional right to appointed counsel to mount a collateral challenge. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *United States v. Williamson*, 706 F.3d 405, 416 (4th Cir. 2013); *Hunt v. Nuth*, 57 F.3d 1327, 1340 (4th Cir. 1995). Although there are certain circumstances in which the Court can appoint counsel in post-conviction matters, Petitioner has failed to show that good cause or the interests of justice warrant the appointment of counsel.

<u>**CONCLUSION**</u>

For the reasons set forth above, Petitioner's grounds and sub-grounds warrant no relief. Neither discovery, nor a hearing, nor the appointment of counsel are warranted here.

**IT IS THEREFORE ORDERED** that Petitioner's motion for the appointment of counsel (Docket Entry 8) is **DENIED**.

**IT IS THEREFORE RECOMMENDED** that Respondent's motion for summary judgment (Docket Entry 11) be **GRANTED**, that the Petition (Docket Entry 1) be **DENIED**, and that Judgment be entered dismissing this action.

_____/s/  Joe L. Webster_____
United States Magistrate Judge

June 5, 2024
Durham, North Carolina